IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALAN D. GREENE, Individually and
as Administrator of the E. GREENE AND
COMPANY PROFIT SHARING PLAN
and of the ALAN D. GREENE IRA; and
SUSAN GREENE,

                   **Plaintiffs,**

v.                                                    **CIV. No. 97-114 JP/DJS**

HORIZON/CMS HEALTHCARE
CORPORATION, NEAL M. ELLIOTT,
KLEMETT L. BELT, JR. AND ERNEST
A. SCHOFIELD,

                   **Defendants.**

## MEMORANDUM OPINION AND ORDER

      The subject of this Memorandum Opinion and Order is "Defendant (Horizon)

Corporation's Motion to Dismiss," [Doc. No. 22] filed November 7, 1997.  After a careful review

of the law and the briefs, I have determined that the motion should be denied in part and granted

in part.

      The Plaintiffs purchased shares of stock in defendant Horizon/CMS Healthcare

Corporation ("Horizon") between October 27, 1993 and June 14, 1995.[1]   Plaintiffs contend that

Horizon relied upon repeated acquisitions of target Healthcare facilities and companies, as well as

illegal Medicare billings and income, to project the illusion of continued consistent earnings

---

      [1]During this time period, the Alan D. Greene Profit Sharing Plan made 13 purchases of
stock;  Alan D. Greene individually made 4 purchases; the Greene IRA made 5 purchases; and
Susan Greene made one purchase.  Plaintiff's Amended Complaint at ¶ 13.

growth.  The "projected" earnings growth sustained a high price for Horizon's stock.  Horizon

used its stock as currency to complete a series of corporate acquisitions beginning as early as

1993.

In February or March of 1996, Horizon revealed that its earnings reports had been falsely

inflated by the inclusion of income from illegal and fraudulent Medicare billings.  Horizon

admitted publicly that it had lied and concealed the truth, and in so doing had falsely inflated

Horizon's earnings and its stock price with improper Medicare billings.  After these reports, the

price of Horizon's stock, which had traded as high as $27-e in January 1996, plunged to $12-¾

per share and Plaintiffs suffered a financial loss.

Based on these and other allegations, the Plaintiffs in their Amended Complaint assert the

following claims: Count I, violations of §10(b) of the Securities Exchange Act and Rule 10b-5;

Count II, violation of §20 of the Securities Exchange Act; Count III, violations of NMSA 1978,

§§ 58-13B-30, 31,32, and 40; Count IV, violations of NMSA 1978, §§ 57-12-1, 3, and 11; Count

V, common law fraud; Count VI, negligent misrepresentation; and Count VII, negligence.

Defendant Horizon moved under Federal Rules of Civil Procedure 8, 9(b), and12(b)(6), as

well as the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737

(1995) to dismiss all claims.  First, Horizon contends that the Amended Complaint violates the

general pleading requirements of Rule 8 as well as the heightened pleading standard contained in

Rule 9(b).  Second, Horizon argues that the Plaintiffs fail to state a claim for securities fraud

under Section 10(b) of the Securities Exchange Act, Rule 10b-5, and Section 20 of the Securities

Exchange Act and that these claims should be dismissed under Rule 12(b)(6).  Third, Horizon

contends that Plaintiffs' state law claims of securities law violations, unfair trade practices, insider

2

trading, fraud, negligent misrepresentation, and negligence should be dismissed under Rule 12(b)(6) for failure to state a claim.

## Rule 8 Pleading

Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief, while Rule 8(e)(1) calls for a simple, concise and direct statement of each averment of the pleading.  The primary purpose of Rule 8 is to give fair notice.  <u>Vicom v. Harbridge Merchant Services, Inc.</u>, 20 F.3d 771, 775 (7th Cir. 1994) (Rule 8 requires a complaint to present with intelligibility sufficient information for a court or opposing party to understand whether a valid claim is alleged and if so what it is).  The inquiry under Rule 8 is whether the complaint provides the defendant with fair notice and a meaningful opportunity to file a responsive pleading.  Plaintiffs' allegations in the Amended Complaint do provide the defendants with fair notice of the claims against them and defendant's motion to dismiss for failure to comply with Rule 8 should be denied.

## Rule 9(b) Pleading

Next, Horizon contends that the Amended Complaint does not satisfy Rule 9(b), which states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, or other condition of mind may be averred generally."  Fed. R. Civ. Pro. 9(b).   Rule 9(b) serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the opposing party.  <u>Vicom, Inc. v. Harbridge Merchant Services, Inc.</u>, 20 F.3d 771, 777 (7th Cir. 1994).  Fair notice is the most basic consideration underlying Rule 9(b) and the complaint should inform each defendant of the nature of the

defendant's alleged participation in the fraud.  Id. at 777-78.  See  Schwartz v. Celestial

Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) ("[T]he purpose of Rule 9(b) is to afford

the defendant fair notice of  plaintiff's claims and the factual ground upon which they are

based ...") (internal citations omitted).  The sufficiency of the allegations of fraud under Rule 9(b)

must be analyzed without weighing the evidence to determine the likelihood of success on the

merits.  See Seattle-First National Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986).

Horizon's argument is twofold: first, that the Plaintiffs fail to plead common law fraud or

securities fraud with particularity, and second, that the Plaintiffs fail to plead scienter with

particularity.  The Rule 9(b) particularity requirements apply to both statutory and common law

securities fraud claims.  Similarly, the Private Securities Litigation Reform Act of 1995

("PSLRA") requires that Plaintiffs must state with particularity facts giving rise to liability, and

those facts must, in turn, give rise to a "strong inference" of fraudulent intent.  In re Silicon

Graphics, Inc. Securities Litig., 1996 WL 664639, at *5 (N.D. Cal. 1996).

A.      Federal securities law claims

"The Courts have strictly enforced Rule 9(b) in claims under securities law, requiring

detailed statements of the specific conduct which allegedly violated the statutes in question."

Farlow v. Peat, Marwick, Mitchell, & Co., 956 F.2d 982, 986 (10th Cir. 1992) (affirming

dismissal of claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

because they did not state in detail what misrepresentations were made by the defendants, to

whom and when the misrepresentations were made, or how the misrepresentations furthered the

fraudulent scheme).

Horizon argues that the Plaintiffs have failed to plead fraud with particularity because the

4

Plaintiffs' use of news clippings does not satisfy Rule 9(b).  In assessing whether the Plaintiffs' use of news clippings satisfies the Rule 9(b) particularity requirement for pleading fraud, I must determine whether the factors set forth in Farlow were met; that is, whether the Amended Complaint satisfies the "what, whom, when, where, and how" requirements.  See Farlow, 956 F.2d at 986.  In a similar case, the Tenth Circuit reversed a district court's decision to grant a motion to dismiss a Section 10(b) claim for failure to satisfy Rule 9(b).  Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246 (10th Cir. 1997). The court in Schwartz reasoned that where the complaint adequately identified (1) the time, place, and contents of the fraudulent misrepresentations or omissions; (2) the identity of the party alleged to have made the misrepresentations or omissions; and (3) the consequences of those misrepresentations or omissions, it satisfied the requirements of Rule 9.  Schwartz, 124 F.3d at 1252-54.  See also Seattle-First National Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986) (stating that Rule 9(b) requires plaintiffs to identify particular defendants with whom they dealt directly and from whom they purchased stock; to identify the occasions on which the statements were allegedly made to them and by whom; and to designate what misstatements or half-truths were directed to them and how) (quoting Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 774-75 (D. Colo. 1964)).

The Plaintiffs' Amended Complaint adequately identifies the time, place and content of the alleged fraudulent statements.  It describes statements with particularity and quotes them in most instances.  For example, the Amended Complaint identifies documents, press releases, and other communications containing the statements.  Plaintiff's Amended Complaint at ¶¶ 26-61 (public statements,  press releases, news wires); 62-64 (registration and prospectus); 87-104 (financial

statements). The Amended Complaint specifically alleges that within the period during which the

Plaintiffs bought stock, Horizon omitted any reference to the improper retroactive billings to

Medicare and the material deficiencies in its long-term facilities, the very factors that lead to a

sharp decrease in the price of Horizon's stock once revealed to the public.  Plaintiff's Amended

Complaint at ¶ 62.[2]   In addition, the Amended Complaint specifically alleges the facts which the

statements misrepresented or failed to disclose.  Plaintiff's Amended Complaint at ¶¶ 66-86.

Rule 9(b) also requires that a complaint set forth the identity of the party who made each

misrepresentation.  Schwartz, 124 F.3d at 1253.  See also Farlow, 956 F.2d at 986.  The Tenth

Circuit in Schwartz stated that "Rule 9(b) requires that the pleadings give notice to the defendants

of the fraudulent statements for which they are alleged to be responsible."  Schwartz, 124 F.3d at

1253.  The Amended Complaint attributes certain statements to Horizon/CMS Healthcare

Corporation, as an organization, and other statements to the individual defendants Neal M. Elliott,

Klemett L. Belt, Jr., and Ernest A. Schofield.   The Amended Complaint specifically attributes

several statements to Defendant Elliott (Amended Complaint at ¶¶ 26, 28, 30- 31, 36, 39, 42-43,

46-57, 59-60) and various others to Defendant Belt (Amended Complaint at ¶ 58).  Many of the

statements are attributed to Horizon as an organization or to all the defendants collectively.

Schwartz indicates that it is not necessary for a plaintiff to identify the individual sources of

statements when the claim of fraud arises from misstatements or omissions in group published

documents such as annual reports, prospectuses, and press releases, which presumptively involve

the collective actions of the corporate directors and officers.  Schwartz, 124 F.3d at 1254.  See

also In re Glenfed, Inc. Securities Litigation, 60 F.3d 591, 593 (9th Cir. 1993) (recognizing that

---

[2]These public statements and press releases span from January 28, 1994 to July 10, 1995.

information conveyed in prospectuses, registration statements, annual reports, press releases or other "group published information" are presumed collective actions).  Using this standard, the Amended Complaint adequately identifies which Defendants, individually or collectively, made each statement thereby putting Defendants on notice sufficient to satisfy Rule 9(b).

Finally, the Amended Complaint adequately describes the fraud, see generally Plaintiff's Amended Complaint at ¶¶ 20-68, and its ultimate result, a dramatic fall in the price of Horizon stock.  Id. at ¶ 4 (stock drops from $27-e to $12-¾ per share).  The Plaintiffs' claims therefore satisfy the pleading requirements of Rule 9(b).

Next, Horizon contends that the Plaintiffs' allegations of fraud by guidance are unsupported by the facts and that Plaintiffs have failed to plead this claim with particularity.  In In re Mesa Airlines Securities Litigation, No. 94-690 JC/WWD, slip. op. at 18 (D.N.M. May 31, 1996) (Conway, C.J.), the court dealt with a claim of fraud by guidance and stated that "[d]efendants can be held liable for an independent securities analyst's report if they placed their imprimatur, expressly or impliedly on the analyst's projections."  Mesa, Civ. No. 94-690 at 18 (quoting In re Exabyte Corporation Securities Litig., 823 F. Supp. 866, 873 (D. Colo. 1993)).  The court clarified that a defendant places his "imprimatur" on an analyst's forecast if he "sufficiently entangle[s] [himself] with the analyst's forecasts to render those predictions attributable to [the defendant]."  Id. at 19 (citing In re Caere Corporate Securities Litig., 837 F. Supp. 1054, 1059 (N.D. Cal. 1993)).  When pleading entanglement, a plaintiff must: (1) identify specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which gave rise to the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred.  Id. at 19.

7

The Plaintiffs fail to meet these requirements because the statements in the Amended Complaint generally allege that the insiders were Defendants Neal Elliott and Ernest Schofield, along with other executives, who provided guidance to the analysts.  Plaintiffs' Amended Complaint at ¶¶ 17-19.  The Amended Complaint does not set forth any specific information needed to show entanglement, such as particular forecasts and interactions between the insiders and the analyst.  Nor does the Amended Complaint state the dates on which the acts that gave rise to the entanglement occurred.  Although Plaintiffs have failed to support a claim of fraud by guidance at this time, they may be able to successfully plead fraud by guidance after they have conducted further discovery.  Plaintiffs' claim of fraud by guidance should be dismissed without prejudice, and they should be given leave to reassert that claim at a later date if they can do so consistent with Rule 11 and the statute of limitations.

Horizon also contends that the Plaintiffs failed to plead scienter with particularity.  The Tenth Circuit has stated that a plaintiff may not maintain an action for damages under Section 10(b) in the absence of allegations of fraud, with intent to deceive, manipulate or defraud on the part of the defendant.  Farlow v. Peat, Marwick, Mitchell, & Co., 956 F.2d 982, 986 (10th Cir. 1992) (requiring that an element of scienter be present because liability may not be imposed for merely negligent conduct).  Under the PSLRA, the facts alleged must give rise to a "strong inference" that defendants possessed such fraudulent intent.  15 U.S.C. § 78u-4(b)(2).  In addition, Section 108 of the PSLRA states that the amendments made by the Act apply to any private action arising under Title I of the Securities Exchange Act of 1934 commenced after Dec. 22, 1995.  15 U.S.C. § 771 and notes.  These amendments require that a plaintiff state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state

of mind.  15 U.S.C. § 78u-4(b)(2).

Horizon maintains that Plaintiffs must (1) allege false or misleading statements, (2) describe how the statements are false or misleading , and (3) create a strong inference of knowing misrepresentation on the part of the defendants.  See In re Silicon Graphics, Inc. Securities Litigation, 1996 WL 664639, at *12 (N.D. Cal. Sept. 25, 1996).  As described above, the Plaintiffs have already met the first two requirements.  The remaining issue is whether the Plaintiffs have adequately alleged a strong inference of knowing misrepresentation on the part of Horizon.

The Second Circuit has indicated that a plaintiff may raise a "strong inference of scienter" using either of two approaches.  In re Time Warner Securities Litig., 9 F.3d 259, 268-269 (2d Cir. 1993), cert. denied sub nom. Ross v. ZVI Trading Corp. Employees' Money Purchase Pension Plan, 511 U.S. 1017, 114 S.Ct. 1397 (1994).  A plaintiff can "allege facts constituting circumstantial evidence of either reckless or conscious behavior."  Id. at 269.  Alternatively, a plaintiff can allege facts "establishing a motive to commit fraud and an opportunity to do so."  Id. See also Grossman v. Novell, Inc., 909 F. Supp. 845, 850-51 (D. Utah 1995), aff'd, 120 F.3d 1112 (10th Cir. 1997).

The Tenth Circuit in one case has indicated that reckless conduct meets the scienter requirement.  Hackbart v. Holmes, 675 F.2d 1114, 1117 (10th Cir. 1982).  Hackbart defined reckless behavior as "conduct that is 'an extreme departure from the standards of ordinary care, and which presents a danger of misleading the buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  Id. at 1118 (quoting Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1045 (7th Cir.), cert. denied, 434 U.S.

875 (1977) (quoting <u>Franke v. Midwestern Okla. Dev. Auth.</u>, 428 F.Supp. 719, 725 (W.D. Okla.

1976))).  Plaintiffs did allege facts indicating that Horizon knew its false reports of growth in

earnings and its fraudulent Medicare billings would keep the price of the stock high.  Plaintiffs

contend that the Defendants' failure to disclose accurate information led Plaintiffs to believe that

the price of the stock was valid when in reality it was falsely inflated.  These alleged facts indicate

that Horizon acted recklessly or knowingly in its fraudulent billing practices and in failing to

investigate or disclose these practices to the public.  The Plaintiffs have plead scienter with

sufficient particularity under the reckless conduct standard.

B.   <u>State securities law claims</u>

Defendant Horizon maintains that the same analysis of pleading fraud with particularity

applies to state law claims.  The Plaintiffs contend that they do not have to meet the Rule 9(b)

requirements for pleading because New Mexico securities law does not require proof of fraud.  I

need not reach that issue because I have already found that, with the exception of the claim of

fraud by guidance, the Plaintiffs have met the heightened pleading requirements for fraud.  The

Plaintiffs have plead their state law fraud claims with sufficient particularity.

<h3 align="center">Rule 12(b)(6) Dismissal</h3>

A court will grant a motion to dismiss under Rule 12(b)(6) only when it appears that the

plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.

<u>Grossman v. Novell, Inc.</u>, 120 F.3d 1112,1118 (10th Cir. 1997).  All well-pleaded allegations are

accepted as true, and all reasonable inferences are construed in favor of the plaintiff.  <u>Id.</u>; <u>Gagan</u>

<u>v. Norton</u>, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994) (quoting <u>Williams v. Meese</u>, 926 F.2d  994,

997 (10th Cir. 1991)).  In the securities context, Rule 12(b)(6) dismissals are difficult to obtain

10

because the cause of action deals "with fact specific inquir[ies] such as materiality." Grossman, 120 F.3d at 1118. However, the court will not hesitate to dismiss securities claims under Rule 12(b)(6) where the alleged misstatements or omissions are immaterial, or where the plaintiff has failed to plead with particularity circumstances that could justify an inference of fraud under Rule 9(b). Id.

A.   Claims Brought under Federal Securities Laws

    1.    Rule 10b-5

The Plaintiffs claim that the defendants have violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. To state a claim under Rule 10b-5, a plaintiff must allege and ultimately prove four things: (1) defendant made an untrue statement of material fact, or failed to state a material fact; (2) the statement or omission occurred in connection with the purchase or sale of securities; (3) the statement or omission was made with scienter; (4) plaintiff relied on the misrepresentation and sustained damages as a proximate result of the misrepresentation. Grossman, 120 F.3d at 1118 (10th Cir. 1997) (citing Farlow v. Peat, Marwick, Mitchell, & Co., 956 F.2d 982, 986 (10th Cir. 1992)); Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1225 (10th Cir. 1996). Apparently, Horizon does not contest the second element. Furthermore, the fourth element, reliance, is presumed where, as here, the Plaintiffs assert a "fraud on the market" theory. Basic v. Levinson, 485 U.S. 224, 247, 108 S.Ct. 978, 992 (1988); Grossman, 120 F.3d at 1118. Thus, in assessing the sufficiency of the Amended Complaint, the focus is on whether the Plaintiffs have adequately alleged that Defendant Horizon made a misleading statement or omission of material fact, and that the statement or omission was made with scienter. Id.

Under Grossman, a statement or omission is material only if a reasonable investor would consider it important in determining whether to buy or sell stock. Id. at 1119.[3]  Here the Plaintiffs allege that Defendant Horizon omitted materially adverse information from their reports to the public and to analysts.  Had the Plaintiffs known that Horizon was unable to keep current earnings high through the various acquisitions, they could have used this information in deciding whether to purchase more shares of Horizon stock.  The Plaintiffs as reasonable investors would have found this information important to their decisions to purchase the stock.

Defendant Horizon argues that Plaintiffs failed to state a claim under Section10(b) because: (1) Plaintiffs did not allege that inflated earnings had been reported before they purchased their stock,[4] (2) Plaintiffs failed to allege misrepresentations and omissions, and (3)Plaintiffs' remaining allegations are unsupported by facts.  Defendant Horizon contends that, in essence, Plaintiffs allege fraud by hindsight.

The Tenth Circuit has noted that securities cases often involve a "catastrophic event" that occurs between the time the alleged misrepresentation was made and the time the solemn truth is revealed.  Grossman, 120 F.3d at 1124 (quoting In re Glenfed, Inc. Securities Litig., 42 F.3d

---

[3]Grossman sets out two additional factors that may render immaterial statements or omissions alleged by a plaintiff: (1) whether the statements are vague statements of "corporate optimism;" and (2) whether other documents released to the investing public by the defendant "bespoke caution" about the alleged misstatement at issue.  Grossman, 120 F.3d at 1119.  "Corporate optimism" involves forward looking statements.  Plaintiffs' claims should not be dismissed on the ground that the misstatements they allege are immaterial based on either of these Grossman factors.

[4]Revenue from Medicare billings and Tenant Healthcare revenue were reported after Plaintiffs had purchased their stock.  Also, the facilities were classified as discontinued operations after Plaintiffs purchased their stock.  Plaintiff's Amended Complaint at ¶¶ 1, 6, 7, 23, 24, 66(a), 80, 81, 82, 84, 96, 97, 98, 99, 100.

1548-49 (9th Cir. 1994)).  Examples of the types of events that qualify as a "catastrophic event"
are a general decline in the stock market, a change in consumer demand, a change in competition,
or a major lawsuit.  Id.  According to Grossman, these are the types of events that typically lead
to "fraud by hindsight" because plaintiffs assume that their misfortune was a result of fraud rather
than the intervening event.  Id.

      Plaintiffs do not assert a claim of "fraud by hindsight" that is prohibited by Grossman.
Rather, Plaintiffs allege that during the period they purchased stock, Defendant Horizon made
material misrepresentations and omitted important information in its disclosures to the investing
public.  As discussed above, Plaintiffs have pled these allegations with the required specificity.
Grossman indicates that the Rule 9(b) requirements for pleading securities fraud ensure that
securities claims will not be based on "fraud by hindsight."  See id.  Because Plaintiffs have met
the heightened pleading requirements of Rule 9(b) and of Grossman, they have successfully plead
material misrepresentations and omissions in violation of Rule 10b-5.

      The Defendants rely on a recent district court opinion which said a plaintiff must allege
that a defendant's accounting tricks and illegalities pumped up the price of the stock *before* the
plaintiff purchased his stock.  Zucker v. Sasaki, 963 F.Supp. 301, 306 (S.D.N.Y. 1997).
Allegation of this nature are not required by Tenth Circuit law.  See Grossman v. Novell, Inc.,
120 F.3d 1112 (10th Cir. 1997).

      Defendants also argue that the Plaintiffs have not sufficiently plead that the Defendants'
misrepresentations or omissions were made with scienter and therefore Plaintiffs fail to state a
cause of action under Section 10(b) or Rule 10b-5.   The Plaintiffs have alleged scienter with
sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).  Plaintiffs do adequately

allege misrepresentations and omissions, and Defendants' motion to dismiss Plaintiffs' claim under

Section 10(b) and Rule 10b-5 should be denied.

2.      Section 20 of the Exchange Act of 1934

The Plaintiffs claim that Defendants violated Section 20 of the Exchange Act of 1934,

which provides:

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be liable
> jointly and severally with and to the same extent as such controlled person to any
> person to whom such controlled person is liable, unless the controlling person
> acted in good faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a).   A defendant is liable under this provision if the plaintiff can establish, first, a

primary violation of federal securities laws, and, second, that the defendant is a "controlling

person" within the meaning of the statute.  First Interstate Bank of Denver, N.A. v. Pring, 969

F.2d 891, 897 (10th Cir. 1992), rev'd on other grounds, Central Bank of Denver, N.A. v. First

Interstate Bank of Denver N.A., 114 S.Ct. 1439 (1994).  The burden then shifts to the defendant

to show that he is entitled to the defense of good faith stated in the statute's final clause.  Id.

Defendant Horizon argues that Plaintiffs' claim of control person liability should be

dismissed because all of Plaintiffs' claims asserting primary violations should be dismissed.

However, as explained above several of Plaintiffs' claims asserting violations of federal securities

law survive this motion to dismiss.  Consequently, Horizon's argument fails.

B.    Claims Brought under State Securities Laws

    1.    NMSA 1978, §§ 58-13B-30, 58-13B-31, and 58-13B-40

NMSA 1978, § 58-13B-54 provides that Sections 58-13B-30, 31, and 40 of the New

Mexico Securities Act "apply to a person who sells or offers to sell a security if: (1) an offer to

sell is made in this state; or (2) an offer to purchase is made and accepted in this state."

Defendant Horizon contends that the offer to sell was not made in New Mexico and that Plaintiffs

consequently have failed to state a claim under §§ 58-13B-30, 31, and 40 of the New Mexico

Securities Act.

    Section 58-13B-54(C) states: "an offer to sell or to purchase is made in this state, whether

or not either party is present in this state, if the offer: (1) originates in the state; or (2) is directed

by the offeror to a destination in this state and received where it is directed, or at a post office in

this state if the offer is mailed."  NMSA 1978, § 58-13B-54(C).  The Plaintiffs, residents of New

Jersey, allege that an offer to sell was made in New Mexico because Horizon's principal place of

business is in New Mexico and because a substantial portion of its business including the "acts and

transactions complained of" occurred in New Mexico.  Plaintiff's Amended Complaint at ¶11.

These allegations meet the requirements of Section 58-13B-54(C) regardless of where Plaintiffs

reside.  The facts alleged by Plaintiffs indicate that the offer to sell likely originated in New

Mexico and this is sufficient to defeat Defendant Horizon's Rule 12(b)(6) motion to dismiss.

However, Defendants may renew this argument in a Rule 56 motion if, after discovery,

undisputed evidence shows that the offer to sell was not made in New Mexico.

    2.    Insider trading under NMSA 1978, § 58-13B-32

Horizon contends that Plaintiffs failed to state a claim of insider trading under NMSA

15

1978, § 58-13B-32 .  Section 58-13B-32 prohibits the purchase or sale of securities by an issuer or another person who has material information not generally available to the general public.  An "issuer or any person" includes an officer, director or affiliate of an issuer or any other person whose relationship to the issuer gives him access directly or indirectly to material information about the issuer not generally available to the public.  NMSA 1978, § 58-13B-32.   No cases have analyzed NMSA 1978, § 58-13B-32.

Defendant Horizon maintains that Plaintiffs have not plead, and cannot plead, that Horizon itself purchased or sold securities on inside information, or that anyone else did so on Horizon's behalf.  In their Amended Complaint, Plaintiffs asserted that two of Horizon's insiders, namely Elliott and Belt, sold stock based on material information about Horizon when the price of the stock was relatively high.  Plaintiff's Amended Complaint at ¶ 15.  However, Plaintiffs did not allege that Defendant Horizon itself sold stock or used inside information or that anyone else did so on the corporation's behalf.  Plaintiffs' Amended Complaint adequately states a claim of insider trading under state law against Mr. Elliott and Mr. Belt, but not against Defendant Horizon.

Defendant Horizon also relies on the Eighth Circuit's holding that standing to enforce an insider trading claim requires that Plaintiffs trade contemporaneously with the insiders.  Laventhall v. General Dynamics Corp., 704 F.2d 407, 412 (8th Cir. 1983).  Laventhall interpreted Section 10(b) of the Securities Exchange Act of 1934, not state law.  Section 58-13B-32 does not, explicitly or implicitly, require contemporaneous trading and the Plaintiffs' claim should not be dismissed on that ground.

C.    <u>Other State Law Claims</u>

1.   New Mexico Unfair Trade Practices Act

Plaintiffs assert a claim under NMSA 1978, § 57-12-3, which prohibits "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce ..."  Plaintiffs seek recovery under Section 57-12-11, which authorizes the Attorney General of New Mexico to recover a civil penalty for violations.

The Plaintiffs' entire claim rests on their purchase of stock registered under federal law. The Securities Exchange Commission regulates and controls all public securities transactions and related matter and practices, <u>see</u> 15 U.S.C. § 78b, and has the power to enter an order requiring that a person cease and desist from any acts in violation of federal securities law.  15 U.S.C. § 77h-1.  NMSA 1978, § 57-12-7 provides that "[n]othing in the Unfair Practices Act shall apply to actions or transactions permitted under laws administered by a regulatory body of the state of New Mexico or the United States."  Since the sale of Horizon's stock is subject to regulation by the Securities Exchange Commission, a regulatory body of the United States, the New Mexico Unfair Trade Practices Act does not apply.  <u>See</u> <u>State v. Gurley Motor Co.</u>, 105 N.M. 803, 807, 737 P.2d 1180, 1184 (Ct. App. 1987) (invoking the Section 57-12-7 exemption where another regulatory body has rendered "permission to engage in the business of the transaction through licensing, registration or some similar manifestation of 'permitting' the business activity.").

Even if the New Mexico Unfair Trade Practices Act did not defer entirely to the Security Exchange Commission, the state statute still would not apply to this case because the Plaintiffs' allegations do not satisfy the definition of an "unfair deceptive trade practice" as it is set forth in

NMSA 1978, § 57-12-2(D) (1995 Repl.).[5]  The sale of stock is neither a good nor a service.  For the same reason Plaintiffs' claims do not fall within the statutory definition of "unconscionable trade practice" as that term is defined in NMSA 1978, § 57-12-2(E) (1995 Repl.).[6]  The Plaintiffs have failed to state a claim under the New Mexico Unfair Trade Practices Act and the Defendant's motion to dismiss should be granted as to that claim.

    2.    Fraud and Negligent Misrepresentation

    Defendant Horizon maintains that Plaintiffs have not properly pled fraud and negligent misrepresentation because they have not alleged any misrepresentation or omission by the defendants upon which Plaintiffs actually relied in purchasing the stock.  Defendant Horizon cites two cases holding that the fraud-on-the-market theory does not satisfy the actual reliance requirement of either common law fraud or negligent misrepresentation.  In re GlenFed Securities Litig., 60 F.3d 591, 592 (9th Cir. 1995) (affirming the dismissal of common law fraud claims in securities action for failure to plead actual reliance); In re Motel 6 Securities Litig., 1997 WL 154011 at *6 (S.D.N.Y. April 2, 1997) (dismissing common law fraud claims which relied on fraud-on-the-market theory).

    Cases decided by the New Mexico Court of Appeals suggest that: (1) fraud and misrepresentation claims can be premised on material omissions as well as affirmative

---

[5]NMSA 1978, § 57-12-2(D) states: "'unfair or deceptive trade practice' means any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services [or] in the extension of credit or in the collection of debts by any person in the regular course of his trade..."

[6]NMSA 1978, § 57-12-2(E) states: "'unconscionable trade practice' means any act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental, or loan, of any goods or services or in the extension of credit or in the collection of debts..."

misrepresentations; and (2) where claims are grounded in large part on failure to disclose, the

Plaintiffs need not allege reliance.  See, e.g., R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 108 N.M.

84, 88, 766 P.2d 928, 932 (Ct. App. 1988) (holding that a person may be liable for damages

caused by a failure to disclose material facts to the same extent that a person may be liable for

damages caused by fraudulent or negligent misrepresentation); Gouviea v. Citicorp Person-to-

Person Fin. Ctr., Inc., 101 N.M. 572, 578, 686 P.2d 262, 268 (Ct. App. 1984) (refusing to grant

defendant's motion for summary judgment on the issue of reliance where plaintiffs alleged both

misrepresentations and omissions by a real estate broker in connection with the sale of a house).

In this case, Plaintiffs alleged reliance both on material misstatements made by Defendant Horizon

as well as on material omissions.  See, inter alia, Amended Complaint, ¶¶ 7, 23, 69, 70, 72, 98-99.

The Plaintiffs' claims of common law fraud and misrepresentation do not fail under 12(b)(6) and

the motion to dismiss them should be denied.

Horizon further argues that the Plaintiffs plead a separate cause of action based on

negligence by words.  See Plaintiff's Amended Complaint at ¶¶ 148, 149, and 150.  Horizon

points to New Mexico cases holding that negligent misrepresentation and negligence by words are

the same cause of action.  See, e.g., Ruiz v. Garcia, 115 N.M. 269, 274, 850 P.2d 972, 977

(1993) (noting that negligent misrepresentation is also known as negligence by words); Stotlar v.

Hester, 92 N.M. 26, 29, 582 P.2d 403, 406 (Ct. App. 1978) (recognizing the tort of negligence by

words may be brought against those who in the course of their business supply false information

for the guidance of others).  Plaintiffs' claims of negligent misrepresentation and negligence by

words will be treated as a single cause of action which should not be dismissed.

19

3.   Corporate Negligence

Defendant Horizon argues that Plaintiffs do not have standing to assert a claim of corporate negligence.  In their Response to Defendants' Motion to Dismiss, Plaintiffs stipulated to the dismissal of this claim, and it should be dismissed with prejudice.

THEREFORE, IT IS ORDERED that "Defendant Corporation's Motion to Dismiss," (Doc. No. 22) is:

1.   GRANTED with respect to Plaintiffs' claim of fraud by guidance, which is DISMISSED WITHOUT PREJUDICE;

2.   GRANTED with respect to Plaintiffs' claim of insider trading against Horizon under NMSA 1978, § 58-13B-32, which is DISMISSED WITH PREJUDICE;

3.   GRANTED with respect to Plaintiffs' claim of a violation of NMSA 1978, § 57-12-3, which is DISMISSED WITH PREJUDICE;

4.   GRANTED with respect to Plaintiffs' claim of corporate negligence, which is DISMISSED WITH PREJUDICE; and

5.   DENIED as to all other claims.

IT IS FURTHER ORDERED that Plaintiffs may file a Second Amended Complaint reasserting their claim of fraud by guidance no later than August 10, 1998 if they can do so consistent with Rule 11.

UNITED STATES DISTRICT JUDGE